UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VICKIE GILBERT, | ) | Case No.  3:18CV2026 |
| | ) | |
| | ) | JUDGE JAMES G. CARR |
| Plaintiff, | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | |
| ANDREW SAUL[1], | ) | REPORT AND RECOMMENDATION |
| COMMISSIONER OF | ) | OF MAGISTRATE JUDGE |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Vickie Gilbert ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. In her brief on the merits, Plaintiff asserts that the administrative law judge ("ALJ") committed reversible error by failing to follow the treating physician rule when considering the opinion of Dr. Arora.  ECF Dkt. #20.  She also contends that the ALJ committed error by failing to recognize the effects that her migraine headaches had on her residual functional capacity ("RFC").  ECF Dkt. #20. For the following reasons, the undersigned recommends that the Court AFFIRM the decision of the ALJ and DISMISS Plaintiff's case in its entirety WITH PREJUDICE.

## I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed an application for DIB on July 22, 2015, alleging disability beginning May 1, 2013 due to lower back, neck, wrist, hip and stomach problems, and headaches.  ECF Dkt. #11 ("Tr.") at 192, 218.[2]  The Social Security Administration ("SSA") denied her application initially and upon reconsideration.  *Id.* at 118-121, 124-126.  Plaintiff requested a hearing before an ALJ, and

---

[1]On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled.  This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

the ALJ held a hearing on January 12, 2018, where Plaintiff was represented by counsel and testified. *Id*. at 43-57, 146. A vocational expert ("VE") also testified. *Id.* at 65.

On May 30, 2018, the ALJ issued a decision denying Plaintiff's application for DIB. Tr. at 43-57. Plaintiff requested that the Appeals Council review the ALJ's decision and the Appeals Council denied her request for review on July 26, 2018. *Id*. at 1-7.

On September 5, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On May 29, 2019, Judge Carr overruled Plaintiff's objections and adopted the undersigned's April 3, 2019 Interim Report and Recommendation that the Court grant Defendant's motion to dismiss the Appointments Clause claim that she presented in her complaint. ECF Dkt. #18. The undersigned thereafter ordered a briefing schedule concerning Plaintiff's remaining claim seeking reversal of the ALJ's decision against her and Plaintiff complied by filing a merits brief on July 15, 2019. ECF #s 19, 20. Defendant filed a merits brief on September 27, 2019. ECF Dkt. #23. **II.      RELEVANT MEDICAL EVIDENCE**

Plaintiff points out in her merits brief that she has a history of right upper extremity issues, beginning in 2009 when she presented to Dr. Fritz for numbness, tingling, paresthesias, pain and decreased strength in that extremity. ECF Dkt. #20 at 1, citing Tr. at 635. He diagnosed her with recurrent carpal tunnel syndrome and cubital tunnel syndrome. *Id*. MRI results of the right upper extremity from May 2, 2011 showed tendinopathy of the right common flexor tendon and an August 24, 2015 x-ray of the right wrist showed osteoarthritis. *Id*., citing Tr. at 318, 638.

Plaintiff first started treatment with Lawson Chiropractic on October 28, 2013 for her neck and lower back pain, which she indicated began years ago and which she rated as a 6 out of 10 on the severity scale. Tr. at 335. She indicated that it had worsened over the years and radiated down her hips. *Id*. at 712. She also stated that it was aggravated by standing, sitting, and walking. *Id.*

A November 14, 2013 lumbar x-ray showed moderate scoliosis, and prominent spondylitic changes and mild degenerative disc disease ("DDD") in the lower lumbar spine. Tr. at 653.

February 28, 2014 treatment notes from Ms. Toland, a Certified Physician Assistant ("PA-C") to Dr. Arora, Plaintiff's treating physician, indicated that Plaintiff presented for the first time indicating that she was living in Florida and had returned. Tr. at 369. She complained of

-2-

stomachaches and headaches. *Id*. Plaintiff recalled her history of irritable bowel syndrome and indicated that she used to have chiropractic care for neck and back pain due to history of moderate scoliosis. *Id*. She further explained that the back and neck pain caused her to have a lot of tension and headaches on an almost daily basis. *Id*. She told PA-C Toland that she had to be careful in taking anti-inflammatories because of her history of severe gastritis. *Id.* Upon physical examination, PA-C Toland noted that Plaintiff had no edema of the extremities, she had limited range of motion peripherally of the cervical spine, and she had diminished grip strength in the left upper extremity. *Id*. She diagnosed Plaintiff with cervicalgia, vertigo, tension headache, and gastroesophageal reflux disorder ("GERD")/gastritis. *Id.* PA-C Toland also ordered an x-ray of the cervical spine, ordered blood work, recommended a colonoscopy which Plaintiff refused, and prescribed Fioricet and Prilosec. *Id*. at 370.    X-rays dated February 28, 2014 show that Plaintiff had no acute abnormality

in her cervical spine. Tr. at 383.

PA-C Toland's progress notes show that on April 17, 2014, Plaintiff presented for labwork follow-up and she reported that working at Honda caused her to have chronic neck pain and headaches. Tr. at 367. She indicated that she tried Fioricet with no relief and chiropractic care did not help. *Id*. Physical examination was normal, except for limited range of motion peripherally of the cervical spine. *Id*. PA-C Toland assessed cervicalgia and headaches not controlled, she scheduled a head and neck CT, and prescribed Tramadol. *Id*. at 367-368. The brain CT was normal. *Id.* at 384, 461. The neck CT showed no evidence of compressive discopathy, no evidence of fracture or acute osseous injury, mild degenerative changes at the atlantodental interval, and an oval within the left lobe of the thyroid likely representing a small cyst. *Id*. at 385, 462.

Plaintiff presented to PA-C Toland on June 27, 2014 for medication refills and she reported that she was still having headaches, but not everyday. Tr. at 365. Physical examination was normal and she was diagnosed with headaches and GERD. *Id*. They discussed Plaintiff seeing a neurologist for her headaches, and Plaintiff indicated that she would think about it. *Id*.

On March 3, 2015, Plaintiff presented to PA-C Toland for follow up regarding her headaches. Tr. at 358. She reported that she was still having headaches that she thought were due

to her history of moderate scoliosis and more recently severe back pain. *Id.* She stated that Plaintiff reported that she was careful about taking anti-inflammatories due to her history of gastritis. *Id*. She had not yet tried physical therapy or massage. *Id.* Physical examination was normal, except it was noted that Plaintiff's right shoulder was sitting lower than her left and she had tenderness along her right trapezius. *Id.* PA-C Toland diagnosed Plaintiff with trapezius myalgia, tension headaches, and migraine headaches, she ordered physical therapy, prescribed Ultram for shoulder pain, Imitrex for headaches, and told Plaintiff to continue Filoricet as well. *Id.*

On April 14, 2015, Plaintiff followed up with PA-C Toland and reported that massage gave her the best relief for her migraines. Tr. at 356. She explained that she only had to take Imitrex once since she was prescribed the medication and it gave her relief. *Id*. She indicated that she had taken none of the Tramadol that she was prescribed. *Id*. She also indicated that she completed physical therapy and was continuing to do her exercises at home, and she asked about medications to help her with menopause irritability. *Id.* PA-C indicated that Plaintiff's physical examination was normal and she diagnosed trapezius myalgia, tension headache, migraine headache, GERD, and irritability due to menopause. *Id*. PA-C Toland indicated that Plaintiff should continue with exercises and her medications, and she prescribed Plaintiff Prozac for the menopause symptoms. *Id.*

May 12, 2015 treatment notes show that Plaintiff presented to PA-C Toland, who diagnosed her with cervical DDD, tension headache, migraine headache, GERD, irritability due to menopause, hypertension, and chest pain. Tr. at 354. Her medications were continued, except for the Fluoxetine, about which she complained of side effects, and she was prescribed a stress test. *Id.* at 355.

On August 24, 2015, Plaintiff presented to Dr. Rosario for follow up on her wrist pain on both wrists, right more than left. Tr. at 317. Physical examination revealed normal results in range of motion, flexion, extension, pronation and supination, although mild tenderness was noted with ulnar deviation against resistance. *Id.* Right wrist x-rays showed mild distal radioulnar joint osteoarthritis with joint space narrowing and small marginal osteophytes, some osseous riding/osteophyte formation along the medial aspect of the pisiform bone, which was most likely

-4-

degenerative, and small subcortical cysts in the dorsal distal to mid aspects of the capitus which were most likely also degenerative. *Id.* at 38.

On October 9, 2015, Plaintiff presented to Dr. Rosario for a follow up as to her wrist pain in both wrists, worse on the right. Tr. at 312. Plaintiff complained that the Voltaren gel was not helping much. *Id.* Physical examination showed normal range of movement in the right wrist, and normal extension, flexion, pronation and supination, as well as normal right wrist strength. *Id.* Mild tenderness of the right was noted with ulnar deviation against resistance. *Id.* X-rays showed no acute osseous findings of the left wrist with minor arthritic changes of the lateral capus. *Id.* at 313-315. Dr. Rosario diagnosed tendonitis of the wrists, right worse than left, and he prescribed a medication and a wrist splint for Plaintiff for when she heavily used her wrist. *Id.* at 313.

A November 25, 2015 x-ray of the right hip showed normal results. Tr. at 319.

On November 25, 2015, Dr. Offutt, M.D., performed a medical examination of Plaintiff for the Opportunities for Ohioans with Disabilities Division. Tr. at 323. Dr. Offutt indicated that Plaintiff reported a 20-year history of neck and back pain from working on the line for Honda. *Id.* Plaintiff had indicated that she used heat, creams, physical therapy, and chiropractic treatment in the past and she was at that time still seeing a chiropractor. *Id.* Dr. Offutt listed Plaintiff's illnesses as irritable bowel syndrome and indicated her past surgeries as right elbow surgery for tennis elbow, surgery on the left fourth finger, right carpal tunnel surgery, and right third finger and thumb tendon release for trigger fingers. *Id.* at 324. Plaintiff also complained of constant irritable bowel symptoms and headaches once per week, for which she was taking Diclofenac once per day. *Id.*

Upon physical examination, Dr. Offutt found that Plaintiff had a normal gait, followed simple commands without difficulty, and had no neck or back spasms. Tr. at 324-325. Dr. Offutt noted that Plaintiff had normal shoulder, elbows, wrists, and upper and lower extremities, but slight redness and smooth skin over the distal fourth finger of the left hand with decreased range of motion, trouble bending the finger, and some muscle atrophy. *Id.* at 325. Dr. Offutt noted that Plaintiff had tenderness from T3 to T6 and from L3 to L5, but no muscle spasm and negative straight leg raising. *Id.* at 326. Dr. Offutt also reviewed the x-rays and diagnosed Plaintiff with back pain, neck pain, migraine headaches, irritable bowel syndrome, status post carpal tunnel release on the

-5-

right wrist, and a gastric ulcer. *Id.* Dr. Offutt opined that Plaintiff's abilities were at least mildly to moderately impaired in performing the work-related activities of bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, and pushing and pulling heavy objects. *Id.* at 327.

On December 14, 2015, Plaintiff began chiropractic treatment at Lawson Chiropractic for her low back pain. Tr. at 333. She indicated that she was seeking treatment for her low back pain that began several years prior, she rated the pain as a 5 out of 10 in severity most of the time, and she had constant pain, with sitting, standing, walking, bending, and lying down increasing her pain. *Id.*

Plaintiff presented to PA-C Toland on December 16, 2015 and described her worsening back pain and leg neuropathy and weakness, which she described as sharp and radiating into her feet. Tr. at 350. Physical examination showed left and right lumbar paraspinous musculature with trigger points, with positive vertebral tenderness on the left. *Id.* She was diagnosed with lumbar radiculopathy and lumbago with sciatica. *Id.* She was told to continue Diclofenac Sodium and a MRI was ordered. *Id.*

December 31, 2015 MRI results showed that Plaintiff had bilevel DDD and disc displacements at L4-L5, L5-S1, "with a rightward radiculopathy at L4-L5 where a shallow broad-based protrusion along with facet arthropathy results in mild left and moderate to severe right foraminal narrowing and abutment of the exiting right L4 nerve root." Tr. at 340.

Plaintiff presented to PA-C Toland on January 22, 2016 for her worsening back pain. Tr. at 349. Her prior worker's compensation case was noted, as well as her complaints of worsening leg neuropathy and weakness, which she described as sharp and radiating into her feet. *Id.* She was diagnosed with lumbar radiculopathy and lumbago with sciatica. *Id.* She was continued on NSAIDS and Prednisone would be used for flares, as well as physical therapy or chiropractic care. *Id.*

Plaintiff presented to Dr. Nowacki on February 24, 2016 for acute exacerbation of her right wrist symptoms. Tr. at 538. He noted that Plaintiff had prior multiple surgeries on her wrist and she complained of mild to moderate pain intermittently, worse with activity, and occasional paresthesias. *Id.* Upon examination, he noted mild tenderness of the distal radial ulna, with limited

-6-

range of motion and decreased strength and some paresthesia. *Id*. at 514. He found no instability and an intact pulse. *Id.* He diagnosed right wrist pain, ulnar negative variance of the right wrist, degenerative changes of the basilar joint, and rule out triangular cartilage tear. *Id.* He reviewed x-rays which showed shortening of the ulnar and degenerative changes and he questioned scapholunate and basilar joint. *Id.* He prescribed Prednisone, recommended a soft brace, and ordered a MRI. *Id.* The MRI showed irregularities for ulnar minus variances, irregularities over lunate, mild arthritis of the radioulnar joint, degenerative changes of the basilar joint with a question of scaphoid lunate ligament injury. *Id*. at 544. He diagnosed ulnar minus variance, chondromalacia of the lunate, degenerative arthritis of the distal radioulnar joint and of the basilar joint, scaphoid lunate ligament injury, and degenerative changes of triangular cartilage. *Id*. He put Plaintiff in a thumb spica brace, told her to decrease her activity, and he noted that she was unable to take anti-inflammatories or Prednisone. *Id.*

Plaintiff followed up with PA-C Toland on February 25, 2016 for her back pain. Tr. at 347. She complained of problems taking the NSAIDS that she was prescribed and she was having neuropathy in her legs and leg weakness accompanying her back pain. *Id.* Physical examination showed left lumbar and right lumbar paraspinous musculature with trigger points and Plaintiff was diagnosed with lumbar radiculopathy and lumbago with sciatica. *Id.* She was prescribed Ultram and Diclofenac was discontinued. *Id.*

Plaintiff answered a headache questionnaire on March 22, 2016 and she indicated that she had headaches at least 4 to 5 days per week lasting several hours to all day. Tr. at 386. She explained that the headaches always began in her neck and then when the headache resolved, she felt like "someone has hit me in the back of my head with a baseball bat," her head was sore to the touch, she felt sick to her stomach, and she then had to lie down in a dark room. *Id*. She also indicated that sometimes Imitrex, Diclofenac and Tramadol work right away to stop the headaches, but other times they did not help until she took several pills and had to lay down to let it resolve on its own. *Id.*

Plaintiff followed up with Dr. Nowacki on March 24, 2016 for her right wrist and upon examination, he observed mild tenderness, positive Phalen sign, positive Tinel, limited range of

motion, early Dupuytren's, decreased strength, but intact pulse, no instability, and no mass or edema.  Tr. at 548.  He ordered an EMG, which showed C5 radiculopathy, acute and chronic.  *Id.* at 548, 551.  He gave her an injection of Xylocaine for her wrist pain on April 7, 2016 and took x-rays of her cervical spine due to neck complaints, which showed degenerative changes.  *Id*. at 552.

On April 7, 2016 cervical x-ray showed minimal dextroscoliotic curvature of the cervical spine that may relate to positioning and/or spasm, and no other acute findings.  Tr. at 391.  No significant degenerative changes were found, although right neural foramina was suboptimally assessed due to obliquity.  *Id*.

An April 7, 2016 EMG showed acute and chronic C5 radiculopathy.  Tr. at 552.

An April 22, 2016 MRI of the cervical spine showed minimal degenerative changes in the cervical spine, not significantly changed since a November 10, 2009 MRI.  Tr. at 390.  The MRI results further indicated that no neural foraminal or spinal canal stenosis was found, and Plaintiff had normal alignment, preserved vertebral body and disc heights, with mild left facet arthropathy at C2-C3 with no significant disc bulge, tiny central disc protrusions at C2-C3, C3-C4, and C4-C5 with no stenosis and unchanged levels from before, and a minimal annular bulge at C6-C7.  *Id.*

April 28, 2016 notes from Dr. Nowacki show that Plaintiff presented for her right wrist and cervical pain and physical examination showed mild tenderness and limited ranges of motion in the wrist and neck, with stability in both.  Tr. at 561.  He reviewed the MRI, which he indicated showed foraminal stenosis and he diagnosed degenerative arthritis with radiculopathy of the cervical spine, and degenerative arthritis of the right wrist with ulnar negative variants.  *Id.*  They discussed surgery, but she did not want to undergo surgery.  *Id*.  Dr. Nowacki  thereafter recommended physical therapy, in which she participated.  *Id.*  Despite therapy, Plaintiff still complained of wrist pain and in 2017, she underwent an injection and continued with the brace and limitation of her activities.  *Id*. at 697.

On August 18, 2016, Plaintiff informed Dr. Nowacki that she started having left wrist pain that was aggravated by movement, lifting, and palpation.  Tr. at 663.  Upon physical examination, he found no tenderness of the left fingers, normal motion, normal appearance, but positive tenderness on palpation of left hand over left thumb basilar joint and pain at basilar joint with

positive grind.  *Id*. at 664.  Examination of the left wrist showed normal appearance, but tenderness on palpation of the wrist over the first dorsal compartment, pain elicited by motion of the wrist, and a positive Finkelstein's test.  *Id*. He diagnosed DeQuervain's Tenosynovitis of the left wrist, basilar joint osteoarthritis of the left thumb, and polyarthalgias.  *Id*. He gave her an injection.  *Id*.

Upon referral by Dr. Arora, Plaintiff presented to Dr. Reddy, a neurologist, on October 21, 2016 for evaluation of her low back pain with right buttock and leg pain, and neck pain with headaches and bilateral arm and hand pain.  Tr. at 511.  Physical examination showed normal range of motion in the neck, tenderness and decreased ranges of motion in the cervical and lumbar back, with diminished shoulder and wrist joint ranges motion, diminished right hip range of motion, and normal reflexes.  *Id*. at 514.  He noted that Plaintiff's lumbar MRI showed mild disc bulge at L4-L5 and degenerative changes at L5-S1, facet arthritis, and degenerative changes and facet arthritis of the cervical spine. *Id*.  Dr. Reddy diagnosed nonspecific low back pain, herniated nucleus pulposus in the lumbar spine, facet arthritis of the lumbar and cervical regions, and osteoarthritis of the cervical spine with radiculopathy.  *Id*. at 514-515.  He noted that conservative care had not helped Plaintiff and he recommended a series of lumbar steroid injections.  *Id*. at 515.

On January 9, 2017, Plaintiff also presented to physical therapy for six weeks due to her chronic low back pain.  Tr. at 394.  After 12 visits, the physical therapist indicated that there was no significant change since her initial visit and she tolerated low weight cervical traction but her pain persisted.  *Id*. at 417.  Plaintiff's activities of daily living were described as "very limited" due to her pain.  *Id*.

A January 13, 2017 left hip x-ray showed no significant findings.  Tr. at 392.

February 21, 2017 MRI results of the lumbar spine showed no major findings to explain Plaintiff's left-sided symptoms, no areas of spinal stenosis, but foraminal narrowing primarily on the right side, and chronic moderate dextroconvex upper lumbar curvature.  Tr. at 701-702.

Dr. Crowell, an orthopedic surgeon, indicated in his March 8, 2017 treatment notes that Plaintiff presented for follow up of her MRI results for her low back pain with right buttock and posterior thigh pain and numbness.  Tr. at 427.  He noted that Plaintiff failed to improve after physical therapy and injections.  *Id.* He further noted her right cervical radicular pain with local hand

-9-

pain and tenderness.  *Id.*  He found on physical examination that Plaintiff's gait was slow and cautious when walking, her neck through lumbar spine showed no deformity, her cervical range of motion was normal, but she had posterior cervical pain with extension, and she had Spurling's positive on the right which produced right cervical pain that extended to her shoulder.  *Id.* at 429. He noted normal upper extremity strength and normal biceps, with normal upper extremity sensation with no swelling, tenderness, or instability.  *Id.*  Lower extremities were also noted as normal in reflexes and sensation, and straight leg raising was negative.  *Id.*

Dr. Crowell also reviewed the lumbar MRI which showed multilevel lumbar degenerative change without severe neural compression, with the exception of right L4-L5 neural foramen, which showed marked L4 foraminal narrowing with craniocaudal compression of the root, with some component of narrowing from the dorsal direction from facet capsule.  Tr. at 429.  He also compared x-rays and noted a local scoliotic tilt concave to the right.  *Id.*  He also indicated that an EMG suggested a right cervical radiculopathy.  *Id.*  He diagnosed Plaintiff with osteoarthritis of the spine with radiculopathy, cervical region, osteoarthritis of the right wrist, and foraminal stenosis of the lumbar region, right L4-L5 primary.  *Id.*  Dr. Crowell opined that Plaintiff may be a candidate for surgery on her cervical and lumbar spine.  *Id.*  He indicated that upon discussion of surgery, Plaintiff indicated that she was unsure if she wanted to proceed. *Id.* at 430.

Dr. Mellis evaluated Plaintiff's left hip pain at the request of Dr. Arora and upon review of the x-ray from January 2017 and his examination, he diagnosed DDD and degenerative joint disease of the left hip and he explained various methods of treatment, including non-surgical and surgical treatment options.  Tr. at 434.  He administered an injection on May 16, 2017, and he ordered another x-ray.  *Id.*

Plaintiff continued chiropractic treatment, physical therapy and injections for her neck and back pain through at least November of 2017.  Tr. at 419-427, 515, 532-537, 602-603, 734-735.

On December 8, 2017, one year after Plaintiff's date last insured, Dr. Arora completed a "General Physical and Mental Impairments" statement in which he indicated Plaintiff's diagnoses as mild disc bulge at L4-L5, degenerative changes at L5-S1, facet lumbar arthritis, degenerative changes in the cervical spine, generalized anxiety disorder, and major depressive disorder.  Tr. at

-10-

847.  He opined that Plaintiff could work 8 hours per day, sit and stand for 30 minutes each at one time, and sit and stand for 4 hours each in a workday.  *Id*.  He further opined that Plaintiff could lift up to 20 pounds on an occasional basis and up to 10 pounds on a frequent basis, and she could occasionally bend, stoop, balance, perform fine manipulations and gross manipulations, raise her arms over her shoulders, and work around dangerous equipment.  *Id*.  Dr. Arora further opined that Plaintiff could constantly operate a motor vehicle and tolerate heat and cold, and frequently tolerate noise exposure and dust, smoke or fumes.  *Id*.  He further opined that Plaintiff had moderate pain and was not significantly impaired in any psychiatric limitations.  *Id*. at 848.  Dr. Arora opined that Plaintiff would likely be absent from full-time work about 4 days per month on average due to her symptoms and/or treatment, and she would be off-task 10-15% of the workday due to her impairments.  *Id*.  Dr. Arora handwrote that "pain has become mentally distracting[;] radicular low back pain causes frequent position changes."  *Id*.

### III.    RELEVANT TESTIMONIAL EVIDENCE

Plaintiff testified that she became disabled on May 1, 2013 because her right wrist and back pain had worsened so that she could no longer work in factories anymore.  Tr. at 72, 75.  She stated that her hand goes to sleep and shakes, and her back pain prevents her from sitting, standing, or lifting.  *Id*. at 72, 75-76.  Plaintiff explained that she could dust her house a little bit and button and zipper clothing, but she had trouble running the sweeper or using a broom.  *Id*. at 77.  She also described headaches from a pinched nerve in her neck.  *Id*. at 78.  Plaintiff testified that the pinched nerve causes her to feel like she has motion sickness daily or every other day and she has to lie down.  *Id.* at 78-79.  In addition to factory work, she indicated that she had also performed title work in the past and had been a physician liaison at a hospital.  *Id.* at 72-74.

Plaintiff described her typical day as waking up and getting cleaned up for the day.  Tr. at 79.  She related that she tries to schedule appointments later in the day because she can get someone to drive her as she cannot take her pain medication when she has to drive.  *Id*.  She watches television, dusts the house a little bit or does laundry, and then she lies down after she has taken her pain medication as it makes her sleepy.  *Id*.  Plaintiff also testified that she wears a wrist brace at night and had tried shots in her wrist and physical therapy.  *Id*. at 80.  She stated that the shots help

-11-

for about 2 weeks and physical therapy did not help. *Id*. at 81. She indicated that she has a computer at home, but she cannot use it as she cannot use the mouse or type. *Id.* She believed that she could sit for about 30 minutes at a time before she has to get up and move around, she could walk around for 30 minutes at a time, and she could stand for 15-20 minutes in one spot. *Id.*

The ALJ asked Plaintiff about Dr. Arora's opinion and whether she was involved in answering the questions that Dr. Arora answered on the form. Tr. at 82. Plaintiff responded that she was not*. Id.* She indicated that he treated her for stomach problems, a heart attack, depression, and allergies and colds. *Id*. at 83.

The VE then testified. Tr. at 83. He reviewed Plaintiff's past relevant work and then the ALJ asked him to assume a hypothetical person who had the same age, education, and past jobs as Plaintiff, who could perform at a light work level, with: pushing/pulling limited on the right to frequently; occasional crawling, stooping and climbing of ramps or stairs, ladders, ropes, or scaffolds; frequent handling, kneeling and crouching; occasional exposure to temperatures less than 40 degrees Fahrenheit; and occasional exposure to wetness. *Id*. at 85. The VE testified that the hypothetical individual could perform Plaintiff's past relevant work as an office coordinator and a physician liaison or hospital admitting clerk. *Id.* He also testified that other jobs existed for such a hypothetical individual. *Id*. at 86.

The ALJ also presented a second hypothetical individual who was the same as the first hypothetical individual, except that the exertional level was changed from light to sedentary. Tr. at 86. The VE testified this individual could perform Plaintiff's past relevant work as a physician liaison or hospital admitting clerk and could also perform other jobs existing in significant numbers in the national economy. *Id.*

The ALJ modified the hypothetical individuals again, changing the handling limitations to occasionally with the right and frequently on the left, with the individual being right-hand dominant. Tr. at 87. The VE testified that this limitation would be work preclusive at both levels. *Id*. at 88. The VE also testified that any hypothetical individual that would be absent or off-task 15% of the day, or would require extra breaks or employer accommodations, due to back pain, wrist pain, motion sickness, would also not be consistent with competitive employment. *Id*. at 88-90.

## IV.   RELEVANT PORTIONS OF ALJ'S DECISION

On May 30, 2018, the ALJ found that Plaintiff met the insured status requirements through December 31, 2016 and she did not engage in substantial gainful activity from her onset date of May 1, 2013 through the date last insured.  Tr. at 45.  The ALJ further found that since that date, Plaintiff had the severe impairments of:  DDD and degenerative joint disease of the cervical and lumbar spines; dextroscoliosis; radiculopathy; migraine headaches; ostepenia; osteoarthritis of the bilateral wrists, status post carpal tunnel release of the right wrist; tenosynovitis of the left wrist; and osteoarthritis of the bilateral thumbs.  *Id*. at 46.  The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1.  *Id.* at 47-48.  After considering the record, the ALJ found that Plaintiff had the RFC to perform light work with the following limitations: she can frequently push or pull with the right; frequently perform handling, kneeling and crouching; occasionally climbing ramps, stairs, ladders, ropes, or scaffolds; occasionally stooping, crawling, and being exposed to wetness and environments where the temperatures are less than 40 degrees Fahrenheit.  *Id.* at 48.

Based upon Plaintiff's age, education, work experience, the RFC, and the VE's testimony, the ALJ determined that Plaintiff could return to her past relevant work as an office coordinator and hospital admitting clerk.  Tr. at 55-57.  In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, through December 31, 2016. *Id.* at 57.

## V.   STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits.  These steps are:

1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.   An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see   20 C.F.R.   § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made

-13-

without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.     If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.     If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency rules and regulations "denotes

-14-

a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## VII.   LAW AND ANALYSIS

### A.   TREATING PHYSICIAN RULE

In her first claim of error, Plaintiff asserts that the ALJ erred by failing to follow the treating physician rule when he afforded less than controlling and only little weight to the opinion of Dr. Arora, her treating physician. ECF Dkt. #20 at 11-13. For the following reasons, the undersigned recommends that the Court find that the ALJ properly applied the treating physician rule and substantial evidence supports his decision to afford less than controlling weight to Dr. Arora's opinion.

An ALJ must give controlling weight to the opinion of a treating source if he finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons"[3] for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and may, therefore, "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted

---

[3]   The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence." Https://www.ssa.gov. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). That Court has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted). The ALJ does not have to perform an exhaustive, step-by-step analysis of each factor; "[h]e need only provide "good reasons" for both h[is] decision not to afford the physician's opinion controlling weight and for h[is] ultimate weighing of the opinion." *Francis v. Comm'r of Soc. Sec.,* 414 Fed.Appx. 802, 804–05 (6th Cir. 2011); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406–07 (6th Cir. 2009); 20 C.F.R. § 404.1527(c)(2).

In his December 8, 2017 questionnaire, Dr. Arora indicated his diagnoses for Plaintiff as mild disc bulge at L4-L5, degenerative changes at L5-S1, facet arthritis of the lumbar spine, degenerative cervical spine, generalized anxiety disorder, and major depressive disorder. Tr. at 847. He opined that Plaintiff could work 8 hours per day, sit and stand for 30 minutes each at one time, and sit and stand for 4 hours each in a workday. *Id*. He further opined that Plaintiff could lift up to 20 pounds on an occasional basis and up to 10 pounds on a frequent basis, and she could

-16-

occasionally bend, stoop, balance, perform fine manipulations and gross manipulations, raise her arms over her shoulders, and work around dangerous equipment.  *Id*.  Dr. Arora also opined that Plaintiff could constantly operate a motor vehicle and tolerate heat and cold, and she could frequently tolerate noise exposure, and exposure to dust, smoke or fumes.  *Id*.  He further opined that Plaintiff had moderate pain and was not significantly impaired as to any psychiatric limitations.  *Id*. at 848.  Dr. Arora opined that Plaintiff would likely be absent from full-time work about 4 days per month on average due to her symptoms and/or treatment, and she would be off-task 10-15% of the workday due to her impairments.  *Id.*  Dr. Arora handwrote that "pain has become mentally distracting[;] radicular low back pain causes frequent position changes."  *Id*.

The undersigned recommends that the Court find that the ALJ properly applied the treating physician rule when considering Dr. Arora's opinion and he provided good reasons for why he afforded the opinion less than controlling weight.  The ALJ addressed Dr. Arora's opinion and explained that Dr. Arora's limitations were inconsistent with the overall evidence, including the doctor's own treatment notes.  Tr. at 55, citing Tr. at 847-848.  The ALJ reasoned that the medical records generally showed that Plaintiff's conditions were mild, and he cited to cervical and lumbar imaging results indicating only mild degenerative changes.  He also cited to physical examination findings indicating that Plaintiff had a normal gait, normal strength, and normal sensation of the bilateral upper and lower extremities.  Tr. at 55, citing Tr. at 323-332, 333-340, 385, 427-437, 461-510, 511-631, 651-654, 705-722.  The ALJ further explained that even when records showed that Plaintiff had decreased ranges of motion, she had no instability.  *Id.* at 55, citing Tr. at 538-541, 713-714.  The ALJ concluded that the overall records did not support Dr. Arora's limitations.  *Id*. at 55.

In asserting that the ALJ did not properly apply the treating physician rule to Dr. Arora's opinion, Plaintiff cites to statements that she made to Dr. Reddy, a neurologist, and to Dr. Arora's PA-C about her severe neck pain, headaches, and her progressively worsening back pain with neuropathy and leg weakness. ECF Dkt. #20 at 11-12, citing Tr. at 485, 490, 495.  Plaintiff does not challenge the ALJ's decision to discount her statements regarding the severity and limiting effects of her symptoms.  Rather, she contends that the ALJ did not sufficiently consider her complaints, the imaging results, or her participation in physical therapy and injections which support Dr. Arora's

opinion.  The undersigned recommends that the Court find no merit to this assertion because Plaintiff's statements about the severity and limiting effects of her symptoms relate to findings regarding her credibility.  The ALJ acknowledged and properly addressed Plaintiff's statements in his decision when he considered and determined the intensity, persistence and limitations of her pain from her headaches, and neck, back and wrist pain.  *Id.* at 49-55.

As to imaging, Plaintiff asserts that the ALJ could not rely on the mainly "mild" findings in these results because such mild findings are not indicative of mild conditions or symptoms.  X-rays showed that Plaintiff had mild facet hypertrophy, mild degenerative changes, and DDD and displacements at L4-L5 and L5-S1, with radiculopathy at L4-L5 causing mild left and moderate-to-severe right foraminal narrowing and abutment of the nerve root.  ECF Dkt. #20 at 506, 507, 514.  She acknowledges that some of the imaging evidence showed mild findings.  *Id.* at 12.  However, Plaintiff contends that the characterization of "mild" findings on the imaging scans does not refer to the degree of symptoms from which she suffers, but rather, refers only to the degree of the abnormality seen on the imaging.  ECF Dkt. #20 at 12.  She cites to Dr. Arora's recommendations that she participate in physical therapy, injections, and a surgical consultation as evidence of her conditions being more than mild and serious enough to warrant these recommendations.  ECF Dkt. #20 at 12, citing Tr. at 340, 470, 472, 474, 653.  She also notes that she received no relief from injections and little relief from physical therapy.  *Id.*  Plaintiff concludes that even if the Court accepts that the "mild" diagnostic findings are not consistent with a significant level of disability, the findings of moderate scoliosis, prominent spondylitic changes, and moderate-to-severe foraminal narrowing bolster Dr. Arora's opinion. ECF Dkt. #20 at 12, citing Tr. at 340, 653.

The undersigned questions Plaintiff's assertion that the "mild" findings on the imaging results only point to the degree of abnormality found on the imaging and not the degree of her condition or symptoms, especially when the results specifically refer to "mild degenerative changes" at the atlantodental interval, "mild right lumbar scoliosis," and "mild decreased disc height and dessication," for example.  Tr. at 506-507.  These findings specifically relate to the degree of the conditions.  Even so, the ALJ relied upon more than these  findings to discount Dr. Arora's opinion.  He cited to Dr. Arora's treatment notes and the treatment notes of other providers which showed that

-18-

physical examinations of Plaintiff indicated that she had a normal gait, normal strength, and normal sensation of the upper and lower extremities. Tr. at 55, citing Tr. at 325, 429, 434, 514, 518, 523-524, 529-530, 713, 722. The ALJ also cited to Plaintiff's daily living activities as inconsistent with Dr. Arora's opinion, as Plaintiff indicated that she makes simple meals, washes small loads of laundry, sees her goddaughters' children off to school, drives, and does the grocery shopping, although the ALJ noted that Plaintiff had some issues regarding some activities as she indicated that she had to wear slip-on shoes, had to sit in order to shave, and suffered pain when she uses her curl brush above her head. *Id.* at 54. The ALJ also noted gaps in Plaintiff's complaints and treatments, and reports that chiropractic treatment and massage had helped, and Plaintiff's reports that Gabapentin "has definitely helped" and had "taken the edge off." *Id.* at 50-51, citing Tr. at 588-590 -383. In addition, the ALJ cited to the physical examination findings of the consultative physician, who found that Plaintiff had nontender wrists, a negative Tinel's sign bilaterally, overall good ranges of motion and use of all extremities, except for some finger bending issues. *Id.* at 55, citing Tr. at 325-327.

Plaintiff also asserts that the ALJ failed to mention the length, frequency, nature and extent of treatment relationship between her and Dr. Arora or Dr. Arora's specialty as required by the treating physician rule. ECF Dkt. #20 at 12-13. She contends that had the ALJ mentioned these factors in his decision, he would have had to attribute greater weight to Dr. Arora's opinion. *Id.* The undersigned notes that the ALJ is not required to conduct a factor-by-factor exhaustive analysis of all of the factors of 20 C.F.R. § 404.1527 (e.g., length of treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency, specialization) in his decision when determining the amount of weight to give a treating source's opinion when he affords it less than controlling weight. *Francis v. Comm'r of Soc. Sec. Admin.,* No. 09-6263, 414 Fed. App'x 802, 804, 2011 WL 915719 (6th Cir. Mar. 16, 2011). Further, the undersigned recommends that the Court find that although the ALJ did not mention the factors identified by Plaintiff, he did analyze two factors for evaluating opinion evidence, consistency and supportability of Dr. Arora's opinion with the record as a whole, which were the main reasons for the weight that he attributed to that opinion. The ALJ explained that Dr. Arora's limitations for the most part were

not consistent with the mostly mild imaging findings, mild clinical examination findings, findings and limitations opined by the consultative and agency reviewing physicians, and Plaintiff's daily living activities testified to or indicated in the record. Tr. at 49-55. The undersigned recommends that the Court find that this was sufficient "to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011).

Accordingly, upon review of the ALJ's reasons and the ALJ's decision overall, the undersigned recommends that the Court find that the ALJ provided good reasons for attributing less than controlling weight to the opinion of Dr. Arora, he provided sufficient reasons for the little weight that he did attribute to Dr. Arora's opinion, and substantial evidence supports his decision.

### B.    HEADACHES AND RFC

Plaintiff also asserts that the ALJ committed reversible error by failing to include in his RFC for her limitations due to her severe headaches. ECF Dkt. #20 at 13-14. She contends that she consistently reported severe headaches to her medical providers and her medical records are consistent with her statements. *Id*. She notes that Dr. Arora prescribed Imitrex and Tramadol for her daily headaches and she continued this medication regimen until 2017 when she had to stop due to a scheduled hip surgery. *Id.* at 14. Plaintiff submits that even though the ALJ recognized her migraine headaches as a severe impairment, he erred by finding that her claimed frequency and severity were not documented by the medical record and he erred by failing to include some limitation in her RFC for her headaches, such as being off-task. *Id.*

The undersigned notes that Plaintiff fails to identify a limitation that the ALJ should have included in his RFC for her relating to her migraine headaches. ECF Dkt. #20 at 13-14. In addition, no medical provider identified any limitations resulting from her migraines. Even Dr. Arora failed to mention her migraine headaches in his opinion. Tr. at 847-848. It is Plaintiff's burden to present evidence showing that she is disabled and must show how the impairment affects her functioning. *Bowen*, 482 U.S. at 146. The undersigned recommends that the Court find that Plaintiff has not done so here.

Moreover, the ALJ found Plaintiff's migraines to be a severe impairment in his decision and he specifically stated that he considered the evidence regarding Plaintiff's back, neck and headaches

in assessing his RFC and these impairments warranted some limitations.  Tr. at 52. The ALJ noted Plaintiff's report that a pinched nerve in her neck caused her headaches and that she was taking medications for the headaches, which helped, but she had to stop after she suffered a mild heart attack after hip surgery.  *Id*. at 49.  He also indicated that Plaintiff reported that she had motion sickness sometimes every day or every other day from the headaches and she has to lay down.  *Id*. He further reviewed 2014 treatment notes in which Plaintiff reported that her neck pain caused her tension and headaches on an almost daily basis.  *Id*.  He cited Plaintiff's report that she took medication for her migraines once a day, even though it was prescribed for twice per day.  *Id*. at 50. The ALJ also cited to Plaintiff's headache questionnaire from March of 2016 in which she reported that she suffered headaches 4-5 days per week and the headaches lasted for several hours.  Tr. at 50, citing Tr. at 386.  He found that medical records did not support the frequency and severity of Plaintiff's headaches at that time.  *Id.* at 51.  He also cited to an April 2016 EMG showing cervical radiculopathy and Plaintiff's participation in physical therapy for her headaches and neck pain.  *Id*. at 51, citing Tr. at 393-418, 435-436.  The ALJ determined that his RFC for Plaintiff accommodated her migraine headaches.  Even though Dr. Arora  failed to mention Plaintiff's migraine headaches in his opinion or any limitations resulting therefrom, and Plaintiff failed to identify a limitation resulting from her headaches that the ALJ did not determine, the undersigned recommends that the Court find that the ALJ nevertheless properly considered Plaintiff's migraine headaches and adequately provided for the impairment in his RFC based upon the evidence in the record.

## VIII.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the decision of the ALJ and DISMISS WITH PREJUDICE Plaintiff's complaint in its entirety.


Date: October 25, 2019                              */s/ George J. Limbert*
                                                      GEORGE J. LIMBERT
                                                      UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).